[Nos. 18237–4–I; 18798–0–I. Division One. August 24, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. MICHAEL SCOTT LATOURETTE, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Deputy,* for appellant.

*C. M. Hassenstab* of *Washington Appellate Defender Association,* for respondent.

SWANSON, J.—The State appeals the superior court order suppressing (1) the baggie containing cocaine seized during a search incident to the arrest of Michael Scott LaTourette for reckless driving and (2) his statements following the seizure of the baggie. The State claims that the search was a reasonable search of LaTourette's person incident to a lawful arrest based upon probable cause. LaTourette cross–appeals, contending that the custodial arrest was an impermissible arrest for a minor traffic offense and that the search exceeded the permissible scope of a search incident to an arrest.

The suppression hearing court made the following undisputed findings of fact. At about 2:30 p.m. on June 25, 1985, Issaquah Police Officer James Schaffer was driving through the main parking lot of Lake Sammamish State Park in King County, Washington, in a marked patrol car. On that date Officer Schaffer held a special commission as a King County Deputy Sheriff.

Officer Schaffer heard a motorcycle engine revving and saw LaTourette on a motorcycle traveling at a high rate of

speed through the parking lot in an area where there were many parked cars and pedestrians. LaTourette accelerated and decelerated sharply, driving within 15 to 30 feet of pedestrians at up to 45 miles per hour. The park's speed limit is 15 miles per hour.

Officer Schaffer, who did not recognize LaTourette or his motorcycle from any prior contact or description, pursued LaTourette and signaled for him to stop, whereupon LaTourette stopped his motorcycle in the parking lot. As Officer Schaffer approached LaTourette, a group of hostile onlookers encouraged LaTourette to flee, shouting, "Go for it." LaTourette made no effort to flee. Officer Schaffer noticed that the vehicle's license tabs had expired.

The officer told LaTourette that he was under arrest for reckless driving and the two walked to the police car. Officer Schaffer had intended to transport LaTourette to another part of the park and there cite him for reckless driving and release him. Before placing him in the patrol car, the officer conducted a search of his person and, feeling a soft object in LaTourette's left front pant pocket, he reached in and pulled out a plastic baggie containing five paper bindles. Based upon his training and experience in drug enforcement, Officer Schaffer recognized that each opaque paper bindle was folded in a manner characteristic of containers of controlled substances.

After putting LaTourette in the patrol car, the officer closely examined one bindle, observing white powder inside. LaTourette said, "You have me now, you might as well lock me up and throw away the key." Upon being advised of his constitutional rights, LaTourette said that he understood them and waived them. He said that he had just bought the motorcycle, had no motorcycle endorsement for his operator's license, and could not afford license tabs. He further stated that the bindles contained cocaine which he had obtained from a friend for the purpose of making some money by selling it in the park.

LaTourette was taken to the Issaquah Police Department, where he received a notice of infraction for having no

motorcycle endorsement for his driver's license in violation of RCW 46.20.500 and for having expired vehicle license plates in violation of RCW 46.16.010, received a verbal warning for reckless driving, and was released. Anticipating that LaTourette would be charged with a violation of the Uniform Controlled Substances Act, Officer Schaffer did not cite him for reckless driving.

LaTourette was charged with possession with the intent to manufacture or deliver cocaine in violation of RCW 69.50.401(a). Following a hearing upon LaTourette's motion to suppress evidence obtained during and subsequent to the search incident to his arrest, the court concluded that the warrantless arrest was a lawful arrest based upon probable cause but that the search incident to the arrest exceeded the permissible scope since the baggie did not feel like a weapon so that the officer was not justified in removing it from LaTourette's pocket.

With the contents of the baggie suppressed and LaTourette's subsequent statements suppressed as the fruits of an illegal seizure, the court found that the suppression order's practical effect was to terminate the case.[1] The court below stayed the proceedings to toll the running of the speedy trial period. Upon its appeal, the State was granted an emergency stay of speedy trial by the Court of Appeals, and the defendant filed a cross appeal.

### WARRANTLESS ARREST

A police officer has the authority to arrest a person for a misdemeanor without a warrant where he has probable cause to believe that the person has committed or is committing a violation of a traffic law such as RCW 46.61-.500, which prohibits reckless driving. RCW 10.31.100(3)(c); *State v. McIntosh*, 42 Wn. App. 573, 576, 712 P.2d 319, *review denied*, 105 Wn.2d 1015 (1986). Reckless driving occurs where a person "drives any vehicle in wilful or wan-

---

[1]RAP 2.2(b)(2) authorizes the State in a criminal case to appeal from a pretrial order suppressing evidence "if the trial court expressly finds that the practical effect of the order is to terminate the case."

ton disregard for the safety of persons or property". RCW 46.61.500(1); *Seattle v. Stokes,* 42 Wn. App. 498, 502, 712 P.2d 853 (1986).

> Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.

*State v. Terrovona,* 105 Wn.2d 632, 643, 716 P.2d 295 (1986).

Here the suppression hearing court's findings, which have not been challenged on appeal, are taken as verities. *State v. Harris,* 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied,* 107 S. Ct. 1592 (1987). The court found that the officer heard a motorcycle engine revving and saw the defendant driving a motorcycle at up to 45 miles per hour through the park parking lot in an area occupied by many cars and pedestrians although the park has a 15 miles per hour speed limit. According to the officer, the defendant accelerated and decelerated sharply and drove within 15 to 30 feet of pedestrians.

LaTourette argues that the facts gave rise to a probable cause belief that he was speeding but not that his driving was in willful or wanton disregard for the safety of persons or property. The uncontroverted facts indicate otherwise. The suppression hearing court's unchallenged conclusion that the officer had probable cause to arrest LaTourette for reckless driving is supported by the undisputed facts. *See State v. Terrovona, supra.*

LaTourette further argues that his arrest was unlawful under *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978), which held

> as a matter of public policy that custodial arrest for minor traffic violations is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear as provided in RCW 46.64.015.

*Hehman,* at 47. In *Hehman* the deputy sheriff observed a defective taillight on the defendant's vehicle and

approached the defendant when he stopped his car in the driveway of his passenger's residence. The defendant, who was found to have an expired operator's license, responded upon inquiry that he was taking his friend home and then was going to work. He was then arrested and a search of his person unearthed two small metal pill boxes containing suspected illegal drugs. *Hehman*, at 46–47.

In *State v. McIntosh, supra* at 576–77, 579, the court upheld the search of McIntosh incident to his arrest for driving without a valid operator's license and distinguished *Hehman* based upon the unique facts[2] in *McIntosh* and the legislation to decriminalize traffic offenses which was enacted after *Hehman* and which authorizes arrests for certain traffic misdemeanors, including driving without a valid driver's license, the traffic offense at issue in both *Hehman* and *McIntosh*. While the arrest and search in *McIntosh* were upheld based upon the case's unique facts, the court stated that "we must follow *Hehman* and generally disapprove of a full search incident to a traffic arrest". *McIntosh*, at 577.

The *Hehman* holding, which rested upon public policy grounds, has been undercut by the Legislature's subsequent decriminalization of certain traffic offenses with exceptions which include driving without a valid driver's license, RCW 46.63.020(8); Laws of 1979, 1st Ex. Sess., ch. 136, § 2, p. 1418.

 RCW 46.63.020 designates as a traffic infraction the failure to do an act required by, or the performance of an act prohibited by, a traffic statute, ordinance, regulation or resolution, with express exceptions. Acts deemed to be traffic infractions may not be classified as crimes. Reckless

---

[2]The unique facts which the court in *State v. McIntosh,* 42 Wn. App. 573, 712 P.2d 319, *review denied,* 105 Wn.2d 1015 (1986) found to distinguish that case from *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978) were that in *McIntosh* the officer was faced with a person who had no identification, did not claim to own the car he was driving, and gave a suspicious account of his activity during the preceding evening so that it was reasonable for the officer to assume that McIntosh would not respond to a citation if issued one.

driving falls within one of the statutory exceptions, former RCW 46.63.020(27), and is a misdemeanor, RCW 46.61-.500(1), not a traffic infraction for which a person may not be arrested. *State v. McIntosh, supra* at 576. Since under RCW 10.31.100(3)(c) a police officer may arrest a person upon probable cause to believe that the person has committed or is committing the offense of reckless driving in violation of RCW 46.61.500, the arrest here was lawful since the police officer had the requisite probable cause. *State v. McIntosh, supra.*

Moreover, while we note the public policy expressed in *Hehman* of disapproving of full searches incident to traffic arrests, even *Hehman* recognizes certain exceptions to its ruling where, for example, a driver lacks satisfactory identification or the officer has reasonable and probable grounds to believe that the driver will disregard a written promise to appear in court. *State v. Hehman, supra* at 47–48; *State v. McIntosh, supra* at 577. Thus to that extent even under *Hehman* the decision to arrest for a traffic misdemeanor is discretionary. Here, as in *State v. McIntosh*, unique circumstances existed, and in the face of hostile bystanders, the officer exercised good police judgment in deciding to arrest the defendant with the intention of transporting him to another area of the park, citing him for reckless driving and releasing him. The suppression hearing court's uncontested conclusion of law 5 is that the "arrest was justified by the nature of the offense and the surrounding circumstances, including the presence of a group of hostile onlookers."

LaTourette argues that his arrest was a mere pretext to conduct a search since he was never cited for reckless driving or any other moving violation. The suppression hearing court's unchallenged finding of fact 5 is that the officer did not recognize LaTourette or his motorcycle from any prior contact or description. Its uncontested conclusion of law 4 is that the arrest was not a pretext for a search of the defendant and that it was LaTourette's reckless driving that attracted the officer's attention and that the officer

had no other interest in the defendant until after the search. At the police station LaTourette received a notice of infraction for having no motorcycle endorsement and for having an expired vehicle license and received a verbal warning for reckless driving. According to the unchallenged finding 16, the officer elected not to cite LaTourette for reckless driving because he anticipated that LaTourette would be charged with a violation of the Uniform Controlled Substances Act. Such a charge was in fact filed. As the trial court concluded, no pretext arrest occurred here.

## SEARCH INCIDENT TO AN ARREST

The State contends that the suppression hearing court erred in concluding that the search of LaTourette exceeded the permissible scope of a search incident to an arrest when the officer removed the baggie containing cocaine from LaTourette's pant pocket. The State assigns error to these critical conclusions of law:

### VII.

Under the Fourth Amendment to the U.S. Constitution and Article I, section 7 of the Washington Constitution, the search of the defendant exceeded the permissible scope of a search incident to an arrest for Reckless Driving. Under *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983), the search of a person incident to arrest is permissible only to remove weapons and avoid destruction of evidence of the crime for which the defendant is arrested. Because the baggie containing cocaine did not feel like a weapon, Officer Schaffer was not justified in removing it from the defendant's pocket.

### XI.

For the reasons stated in section VII of this part only, the seized baggie and its contents are suppressed. The statements of the defendant are suppressed as the fruit of the illegal seizure.

Conclusions of law 7, 11.

Under the Fourth Amendment a warrantless search generally is per se unreasonable unless it is justified by an exception to the warrant requirement. One recognized exception is a search incident to a lawful arrest. *State v.*

*White,* 44 Wn. App. 276, 277, 722 P.2d 118, *review denied,* 107 Wn.2d 1006 (1986).

LaTourette contends that the warrantless search incident to an arrest here was unreasonable under *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983), *overruled in part in State v. Stroud,* 106 Wn.2d 144, 151, 720 P.2d 436 (1986),[3] in which our State Supreme Court declared:

> [W]hen a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control. A warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested.

(Citation omitted.) *State v. Ringer, supra* at 699.

Here the suppression hearing court concluded that since the baggie containing cocaine did not feel like a weapon, the search was unreasonable under *Ringer,* which permits a search incident to an arrest only for weapons or evidence of the crime for which the defendant is arrested. The State argues that *Ringer* is inapposite in that *Ringer* involved a warrantless automobile search, not a search of the person as in the instant case. We agree.

■ The search here was reasonable under *State v. McIntosh,* 42 Wn. App. 573, 712 P.2d 319, *review denied,* 105 Wn.2d 1015 (1986) and *State v. White,* 44 Wn. App. 276, 722 P.2d 118, *review denied,* 107 Wn.2d 1006 (1986). In *State v. McIntosh, supra* at 575, 577–78, the court rejected the very argument that LaTourette has raised where the police officer, incident to an arrest for not having a valid driver's license, patted down the defendant for

---

[3]*State v. Stroud,* 106 Wn.2d 144, 151, 720 P.2d 436 (1986) overruled that portion of *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) under which the court is to view the totality of the circumstances surrounding the arrest and determine whether the police have shown the exigencies which necessitated a warrantless search.

Noting that such a test is too burdensome for police officers who must make a decision to search with only momentary reflection, the *Stroud* court recognized the need to draw a clearer line to aid police enforcement.

weapons and, feeling bulges in his pocket, searched his person and found jewelry in his pant pocket.

*McIntosh* held that the search was reasonable as the search of a suspect incident to a lawful arrest under *United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) and *Gustafson v. Florida,* 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973), which involved searches incident to arrests for minor traffic offenses. *State v. McIntosh, supra* at 578.

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, . . .

*United States v. Robinson,* 414 U.S. at 235, quoted in *State v. McIntosh, supra.* The *McIntosh* court noted that although our State Supreme Court in *State v. Hehman,* 90 Wn.2d 45, 49, 578 P.2d 527 (1978) declined to follow *Robinson* and *Gustafson, McIntosh* was distinguishable from *Hehman* in that McIntosh was lawfully arrested. *State v. McIntosh, supra.* In the instant case LaTourette was lawfully arrested.

In reversing the suppression of evidence, the court in *State v. White, supra* at 277–80 similarly rejected the argument that the scope of the search incident to an arrest for driving while intoxicated was excessive under *State v. Ringer* where during a pat–down search the officer felt in White's coat pocket something hard which turned out to be a small cosmetic case containing a small bindle of paper with white powder inside, a razor blade and a straw.

Noting the diminished expectation of privacy of the person which accompanies an arrest, the *White* court distinguished between items found on a person, such as a wallet

or cigarette package, and possessions such as purses, brief-cases or luggage within an arrestee's immediate control, which latter items have a greater expectation of privacy. Where this greater expectation of privacy exists, the search must be justified by additional reasons besides the fact of an arrest, such as the concern for police safety and the prevention of the destruction of criminal evidence. *White,* at 278–79. Limiting *Ringer* to a warrantless automobile search, *White* notes that *Ringer* is inapplicable to a body search. *White,* at 279. Here the warrantless search of LaTourette's person, including his pant pocket, incident to a lawful arrest was reasonable. *State v. White, supra* at 277; *State v. McIntosh, supra* at 577–78.

LaTourette's argument that he could properly have been searched for only evidence of reckless driving lacks merit. Evidence seized incident to a lawful arrest may be used to prosecute the arrested person for a crime other than that for which he was initially apprehended. *State v. White, supra* at 278.

The trial court's uncontroverted conclusion of law 10 is that following LaTourette's arrest, he was advised of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and that he knowingly, intelligently, and voluntarily waived them. Following his waiver, he made the statements set forth in finding of fact 12.[4] In his cross appeal LaTourette does not challenge the validity of his waiver, and nothing in the record indicates that it was other than valid.

The State has presented no arguments or citations to authority that if the arrest and seizure of the baggie con-

---

[4]Finding of fact 12 states:

"Officer Schaffer advised the defendant of his constitutional rights and the defendant said he understood and would waive them. The defendant said he just bought the motorcycle, had no motorcycle endorsement for his operator's license, and could not afford license tabs. He said that the bindles contained cocaine, which he had obtained from a friend for the purpose of obtaining cash by selling it in the park. The defendant was released from custody without being booked into jail or fingerprinted."

taining cocaine were lawful, LaTourette's statement set forth in finding of fact 11[5] preceding his waiver of rights is admissible. Thus any claim of error as to the suppression of LaTourette's statement prior to his waiver of rights has been abandoned. RAP 10.3(a)(5); *State v. Manthie*, 39 Wn. App. 815, 825, 696 P.2d 33, *review denied*, 103 Wn.2d 1042 (1985); *see Thomas v. Ruddell Lease–Sales, Inc.*, 43 Wn. App. 208, 215, 716 P.2d 911 (1986).

The suppression order is reversed except for LaTourette's statement preceding his waiver of constitutional rights, and the case is remanded for trial.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied September 22, 1987.

Review denied by Supreme Court January 5, 1988.

---

[5]Finding of fact 11 states in pertinent part: "The defendant said, 'You have me now, you might as well lock me up and throw away the key.'"