Rodger Lee ROOSE, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–68.

Supreme Court of Wyoming.

June 8, 1988.

Rodger Lee Roose, pro se.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., and Patricia M. Samuels, Student Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Rodger Roose appeals pro se from his conviction of five counts of burglary in violation of § 6-3-301(a), W.S. 1977, and one count of larceny in violation of § 6-3-402(a) and (c)(i), W.S.1977.

We affirm.

A summary of appellant's issues on appeal is as follows:

1. Whether the trial court erred in allowing items seized in two separate searches and items seized as a result of those searches to be introduced as evidence;

2. Whether sufficient evidence existed for the conviction of appellant on each of the six counts; and

3. Whether the trial court erred in refusing to give appellant's proposed jury instruction.

On the evening of April 11, 1986, a 911 emergency telephone call was received reporting the recent theft of an automobile, and police officers were dispatched in an attempt to locate the vehicle. Prior to leaving the police department, the officers were alerted that the driver of the vehicle might be armed and dangerous because a suspected burglar had previously abandoned an automobile and because numerous earlier burglaries in the area had resulted in the theft of several firearms. A short time later, a police officer spotted the reported vehicle being driven by an unknown person and pulled the vehicle over to the curb. That officer, with the assistance of another officer, then attempted to make a felony traffic stop.

During that felony traffic stop, the suspect exited the vehicle as directed by the police officers, but he failed to follow police orders to keep his hands up and began to move forward as if to run in spite of a police order to halt. As the suspect moved, he also reached with his left hand toward the small of his back. One of the officers, believing the suspect was reaching for a weapon and perceiving a threat, discharged his shotgun, hitting the suspect. The suspect was then apprehended.

During the search incident to his arrest, the suspect was frisked for weapons. Only a wallet and a pocket knife were found and removed from the pockets of his pants. The officers asked the suspect to identify himself, but he refused. He was arrested, taken into custody, and transported by ambulance to the hospital for medical attention. At the hospital, the suspect continued to refuse to identify himself; however, he was identified as Rick King through the use of rent receipts found in his wallet.

Between March 21 and April 11, 1986, five burglaries occurred in Douglas, Wyoming, but, because each of the burglaries was similar in nature, it was suspected that they were committed by the same burglar. While the fifth burglary was in process, it was interrupted, and a vehicle search of the surrounding streets produced a vehicle having license plates which were reported stolen in an earlier burglary and being registered in the name of a previous burglary victim. The keys to the vehicle, which

were left in the ignition, were on a key ring which also contained a key to a post office box which was rented to Brad Steer. In a separate investigation involving mailbox tampering in Douglas, it was learned that Brad Steer had numerous aliases, one of which was Robert Moore. The injured suspect, then known as Rick King, fit the description of Robert Moore which was given by postal employees.

At the scene where the suspect was shot, a police officer collected numerous articles of evidence. Among these articles was some of the suspect's clothing, including a pair of pants which was cut off him in order to render treatment before he was taken to the hospital. Later, as the pants were being logged into evidence, it was discovered that they contained various coins. These coins were identified as being missing as a result of a previous burglary.

On April 12, 1986, police officers obtained a search warrant for the suspect's residence. In that search, they recovered stolen property from the five burglaries which had occurred in Douglas. The police also discovered materials and equipment used for producing false identification, jewelry which was in the process of being converted, and a note written in the suspect's handwriting, which listed the names, addresses, and dates of requests for holds in mail service in Douglas, including the residence which was the site of the interrupted burglary. Later, the suspect was correctly identified as appellant Rodger Roose.

On April 30, 1986, an information was filed charging appellant with one count of burglary, three counts of aggravated burglary, one count of attempted aggravated burglary, and one count of larceny. Appellant pleaded not guilty to those charges on May 1, 1986. On June 6, 1986, an amended information was filed which charged appellant with one count of burglary, four counts of aggravated burglary, and one count of larceny.

Following numerous motions by appellant, most of which requested additional time, he filed a motion to suppress evidence on the basis that the search of his residence occurred at night. On November 10, 1986, appellant filed another motion to suppress evidence because excessive force had been used in his arrest, and, on November 24, 1986, he filed a motion to suppress the search warrant used to gain access to his residence. These motions were denied by the court at a pretrial hearing. At that same hearing, appellant also moved for the suppression of evidence on the basis that the rent receipts and coins found as a result of his arrest were produced in an illegal search, but this motion was also denied by the trial court. Additionally, the proposed jury instructions which were submitted by appellant prior to his trial were rejected by the trial court.

■ A four-day jury trial began on December 4, 1986. On numerous occasions during the trial, appellant renewed his motions concerning the suppression of evidence on the bases of night search, excessive force, defective search warrant, and illegal search and seizure. These motions were continually denied by the trial court. Pursuant to a stipulation between the State and appellant, the jury was instructed only on the five counts of burglary and not on aggravated burglary.[1] Appellant was

1. At the close of the evidentiary phase of the trial, the court, over the State's initial objection, removed a previously approved aggravated burglary jury instruction regarding those charges and replaced it with an instruction on burglary, a lesser-included offense. Appellant and the State thereafter stipulated to the change in instructions.

Although most of the discussion surrounding this change in instructions occurred off the record, it can be surmised that the court determined that the State had not presented sufficient evidence to warrant an instruction on aggravated burglary. It additionally is not clear from the record whether or not appellant requested a lesser-included instruction. It is not necessary, however, that such a request be made. The court may give an instruction on a lesser-included offense without a request from either party. 2 Wright, Federal Practice and Procedure: Criminal 2d § 498 at 800 (1982). In addition, we have previously held that a defendant may be convicted of a necessarily included offense even though the information charges him only with violating the greater offense. *Balsley v. State*, Wyo., 668 P.2d 1324 (1983); *Evanson v. State*, Wyo., 546 P.2d 412 (1976).

found guilty on all five counts of burglary and the one count of larceny. On January 13, 1987, appellant was sentenced to a term of eight to ten years in the Wyoming State Penitentiary for each count, said sentences to run concurrently but consecutive to any other sentence which might be imposed for his conviction of another burglary in the Ninth Judicial District. On January 21, 1987, appellant filed his notice of appeal.

## ADMITTANCE OF EVIDENCE

Appellant contends that the trial court erred for numerous reasons when it permitted the items recovered during a search of his residence to be introduced into evidence.

### Search and Seizure

Appellant alleges that the search made by officers after he was shot was unreasonable because only a weapons frisk should have been made and that the taking of his wallet during a weapons frisk was illegal. He argues that a search warrant was necessary to obtain his wallet and the rent receipts it contained. Similarly, appellant asserts that the search of his pants after they had been cut from his body was illegal. Appellant also asserts that, because the information used in obtaining the search warrant for his residence was secured through illegal searches, the evidence found at his residence must be excluded.

In *Brown v. State*, Wyo., 738 P.2d 1092, 1097 (1987), quoting from *Goddard v. State*, Wyo., 481 P.2d 343, 345 (1971), we stated that,

" 'if the initial search is held improper, not only the evidence obtained by such search but everything which becomes accessible to the prosecution by reason of the initial search would be inadmissible as "a fruit of the poisonous tree." ' "

However, for this rule to apply, the initial search must be illegal.

In *Brown v. State*, we recognized that searches and seizures made without a warrant or outside the judicial process are per se unreasonable under both the Fourth

See Rule 32(c), W.R.Cr.P. See also *State v.*

Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution, subject only to a few specifically established and well-delineated exceptions. See also *Wilde v. State*, Wyo, 706 P.2d 251 (1985), and *Hunter v. State*, Wyo., 704 P.2d 713 (1985). Two of these exceptions which we have recognized are search incident to arrest and search and/or seizure to prevent imminent destruction of evidence. *Brown v. State*, supra; *Wilde v. State*, supra.

■ In determining whether the search-incident-to-arrest exception is applicable, it first is necessary for us to determine whether a lawful arrest had been made. In *Neilson v. State*, Wyo., 599 P.2d 1326, 1333 (1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980), we stated:

"A peace officer may arrest a person without a warrant if, at the moment the arrest is made, he has probable cause to believe that a crime had been committed by the person to be arrested, or he has reasonable grounds to believe that a crime is being committed in his presence by the person to be arrested. Stated another way, the determination of probable cause to arrest without a warrant depends upon whether the facts and circumstances within the peace officer's knowledge and of which he has reasonably trustworthy information were sufficient to warrant a reasonably cautious or prudent man to believe that the person arrested has committed or is committing an offense. The constitutional standard governing probable cause is grounded upon reasonableness. Thus, an appellate court's inquiry into whether or not an arrest is legal in a given case is restricted to an objective consideration of the evidence in the record." (Citations and footnote omitted.)

The police officers saw appellant driving an automobile which matched the description of, and bore the same license plates as, a vehicle which had been reported as stolen only moments earlier. This constitutes probable cause for the police officers to arrest appellant.

*Selig,* Wyo., 635 P.2d 786 (1981).

■ Next, having determined that appellant was lawfully arrested, we must further determine whether the search of his person amounted to a search which was incident to his arrest. As indicated in *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, *reh. denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969):

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. *In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.* And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*" (Emphasis added.)

The officers immediately performed a search of appellant in an attempt to remove any weapons from his person. In that search, the officers found a wallet and a small knife. The contents of the wallet provided the officers with one of appellant's numerous identities and the address where appellant lived. It is reasonable to assume that appellant might have destroyed or concealed the wallet and its contents if he had been allowed to keep them. Later, officers retrieved appellant's pants from the scene of the arrest and, after an inventory search, found coins in a pocket of those pants. Similarly, if appellant had been permitted to have his pants, it is reasonable to assume that he would have also

concealed or intentionally separated himself from the coins found in the pocket so he would not be linked to one or more of the burglaries. Both searches were incident to appellant's arrest and prevented the imminent destruction of evidence.

Appellant also argues that the police illegally took possession of his pants and coins because their search was not incident to his arrest since he already had been arrested and he no longer remained at the scene. Likewise, he complains that, because he had been separated from his wallet, it was illegal for the police officers to search through it at the hospital in an attempt to identify him.

■ It has been established that inventorying items when there is a formal detention of an arrested person is an appropriate search in the constitutional sense even though the chief purpose is not to search for evidence. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976). The requirement for a warrant is excused because probable cause is irrelevant when a search is undertaken for the purpose of an inventory rather than for an investigation. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, supra. As stated in *Illinois v. Lafayette*, 462 U.S. at 646–48, 103 S.Ct. at 2609–11:

> "At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests supports an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. Arrested persons have also been known to injure themselves—

or others—with belts, knives, drugs, or other items on their person while being detained. * * * The bare recital of these mundane realities justifies reasonable measures by police to limit these risks—either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independently of a particular officer's subjective concerns. * * *

\* \* \* \* \* \*

"Applying these principles, we hold that it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."

The scope of a search conducted at the station is not limited to items in the immediate control of the defendant. If the arrestee's access to the objects searched terminates between the time of arrest and the time of the search, it is sufficient that the items were on his person or in his control at the time of his arrest. Id.; see also 2 LaFave, Search & Seizure § 5.3 (2d Ed. 1987).

The search of appellant's pants was reasonable. It produced the coins which were stolen in an earlier burglary and might have produced other articles which would have demanded safekeeping by police or which might have endangered jail security. Although appellant contends that the search of his pants was conducted at the scene of his arrest, making the search illegal, the record indicates that this search was conducted at the Converse County sheriff's department for the ostensible purpose of taking inventory.

█ In a case dealing directly with the issue of appellant's wallet, *United States v. Basurto,* 497 F.2d 781, 792 (9th Cir.1974), that court stated:

"In *Chimel,* the Supreme Court stated that 'it is entirely reasonable for the arresting officer to search for and [to] seize any evidence on the arrestee's person in order to prevent its concealment or destruction....' 395 U.S. at 763 [89 S.Ct. at 204]. Waggoner argues that the search 30 minutes after his arrest does not come within *Chimel,* since the wallet at that point was 'under the dominion and control' of the Customs agents.

"That issue was decided to the contrary in *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771, 42 U.S.L.W. 4463 (1974). There the Court held 'that *once a defendant is lawfully arrested and in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest ... and the taking of property for use as evidence....'* 415 U.S. at 807 [94 S.Ct. at 1239]. An argument similar to that advanced by Waggoner was rejected by this court in *United States v. Mehciz,* 437 F.2d 145 (9th Cir.1971), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971)." (Emphasis added.)

See also those cases cited in 2 LaFave, Search & Seizure, supra at 479 n. 12. While it is clear the inspection of an arrestee's wallet may be proper under an incident-to-arrest rationale, the examination also may be properly conducted under an inventory search rationale or to provide assistance to the police in ascertaining or verifying the arrestee's identity. *Illinois v. Lafayette,* supra; *State v. Brown,* 291 Or. 642, 634 P.2d 212 (1981); 2 LaFave, Search & Seizure, supra. As stated in the case of *State v. Brown,* 634 P.2d at 219, the Oregon Supreme Court stated that "[a] search of person is construed to include clothing and the opening of small closed containers like cigarette boxes and wallets." Therefore, it was reasonable for the officer to take appellant's wallet and search its contents.

Appellant cannot find comfort in his arguments that the search of his wallet was conducted at the hospital and not at the police station and that information obtained from the searches must be excluded because it related to other crimes than the one for which he was initially arrested. At the time appellant's wallet was searched, he already had been arrested, was in the custody of the police, and, for all practical purposes, was being held in detention at the hospital. Appellant may not hide behind the fact that the police officers escorted him to the hospital for his own well-being. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). It also has been established that evidence seized incident to a lawful arrest may be used to prosecute the arrested person for a crime other than the one for which he was initially apprehended. *Id.; People v. Bischofberger*, Colo., 724 P.2d 660 (1986); *State v. LaTourette*, 49 Wash.App. 119, 741 P.2d 1033 (1987).

We hold that the searches which produced appellant's wallet, his rent receipts, his pants, and the coins contained in the pants pocket were properly conducted.

### Excessive Force

■ Appellant argues that, because excessive force was used in his arrest in violation of the state and federal constitutions, the evidence secured by such arrest should be subject to the exclusionary rule. Apparently, it is his contention that, under *Schmerber v. California*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966), which states that seizure of evidence from the body is reasonable under the Fourth Amendment only if it is undertaken so as to avoid "an unjustified element of personal risk of infection and pain," and under *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), which states that the seizure of evidence from the body with "conduct that shocks the conscience" is in violation of due process and such evidence must be excluded, it follows that the seizure of a person must likewise be reasonable from the use-of-force standpoint. See also *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

The record shows police officers had been alerted that appellant, the driver of an allegedly stolen vehicle, might be armed and dangerous because a suspected burglar had previously abandoned an automobile and because several firearms had been stolen in numerous earlier burglaries in the area. During the felony traffic stop, appellant exited the vehicle as directed by police, but he failed to follow police orders to keep his hands above his head where they could be seen. He eventually began to move forward as if to run and reached with his left hand toward the small of his back in an apparent attempt to grasp a weapon. Perceiving a threat, one of the officers discharged his shotgun, hitting appellant.

As stated in *Tennessee v. Garner*, id. at 11–12, 105 S.Ct. at 1701:

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."

Looking at the totality of the circumstances in this case and recognizing that a police officer must make split second decisions regarding such grave matters, we hold that the police officer was justified in using the force he used in this instance.[2]

### Search Warrant

Appellant challenges the validity of the search warrant which authorized the search of his residence. He asserts that, under the "fruit of the poisonous tree" rule as enunciated in *Brown v. State*, 738 P.2d at 1094, all the evidence obtained from that

---

2. We note that, as soon as the officers were ensured their lives and the lives of others near the scene were no longer threatened, medical treatment was summoned for appellant.

search must be excluded because the search warrant was invalid.

■ Appellant states that the search warrant was defective and issued unreasonably because the affidavit supporting the warrant contained intentional misstatements, falsehoods, and statements made in reckless disregard for the truth.[3] He asserts that the affidavit contained false information in that the police had apprehended a person other than Robert Moore, one Rick King, and that the rent receipts found on his person gave the address for King rather than for Moore. He further asserts that the criminal warrant which had been issued on April 10, 1986, and which was mentioned in the affidavit for the search warrant was invalid because it failed to properly identify with reasonable certainty the person to be arrested. He surmises that, since the criminal warrant was invalid, no substantial basis existed for concluding that there was probable cause for issuing the search warrant.

It is stated in *Ortega v. State*, Wyo., 669 P.2d 935, 940 (1983):

"The Fourth Amendment to the United States Constitution and Art. 1, § 4, Constitution of the State of Wyoming prohibit 'unreasonable searches and seizures.' A search, within the meaning of these provisions, occurs when the government intrudes upon a reasonable expectation of privacy. * * *

"Where the privacy interest is claimed in a home, courts have universally recognized the existence of a reasonable expectation of privacy. As this court has stated: 'A home is entitled to special dignity and sanctity, and the proper way

to search a home is to obtain a search warrant.' *Jessee v. State*, Wyo., 640 P.2d 56, 62 (1982)." (Citations omitted.)

We stated in *Bonsness v. State*, Wyo., 672 P.2d 1291, 1292–93 (1983), that:

"In order to issue a proper search warrant, a magistrate must have a 'substantial basis' for concluding that probable cause exists. A magistrate's determination of probable cause should be paid great deference.

"[Article 1, § 4 of t]he Wyoming Constitution requires that a search warrant be issued only upon a showing of probable cause. Probable cause must be supported by an affidavit which supplies the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant. The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant. Facts which lead the affiant to believe that a warrant is justified must be presented in the affidavit. The test for determining the existence of probable cause is whether a factual situation is sufficient to warrant a reasonably cautious or prudent man to believe that a crime was being committed or that one had been committed. This test requires that the issuing officer weigh and consider all of the circumstances surrounding the issuance of a warrant." (Footnote and citations omitted.)

Taken on their face, the statements in the affidavit in support of the search warrant contained sufficient information for an independent judgment to be made that probable cause did exist. There is no merit in appellant's allegation that the affidavit

---

**3.** The affidavit in support of the search warrant which was presented to the judge contained the following statements:

"That Robert Moore was apprehended driving a stolen vehicle on April 11, 1986. That Robert Moore is an alias used by Brad Steer who is wanted on criminal warrant #S167–C, issued April 10, 1986, signed by Judge John Holtz charging the crime of aggravated burglary. That Brad Steer's post office box key was found in a vehicle which had been stolen from Evanston, Wyoming, and said vehicle was bearing Wyoming license plate # 13–7522 which was stolen from the Alva Rose resi-

dence, 1002 Bandera, Douglas, Wyoming. That the perpetrators of the Alva Rose burglary used the same modus operandi as the perpetrators of the burglaries at 1313 Monroe, Douglas, Wyoming, 923 Riverbend Court, Douglas, Wyoming, 219 Jolley, Douglas, Wyoming, and 34 Fairway Estates, Converse County, Wyoming. That Robert Moore's address was recovered from rent receipts on his person at the time of arrest. That at the time of Robert Moore's arrest he possessed 5 Half Dollar coins and 50 half dollar coins [which] were taken from 34 Fairway Estates."

improperly listed Robert Moore when it should have named Rick King or, in actuality, Rodger Roose. Simply stated, the affidavit adequately described that person arrested on April 11, 1986, upon whose body was found distinguishable evidence linking him to burglaries previously committed in the area and the residence where that person was believed to have resided regardless of the name by which he was known. In this instance, the person arrested met the description of Robert Moore, and police had been put on notice that he had previously used numerous aliases. It was therefore appropriate for the authorities to assume that Rick King was an additional alias.

■ The arrest warrant specified in the affidavit in support of the search warrant was also properly issued. Appellant again asserts that, because it did not contain every one of his aliases and did not give a written description of his appearance, the arrest warrant was inadequate insofar as specifying the exact person wanted for arrest.[4] Rule 4(b)(1), W.R.Cr.P., provides:

"Warrant.—The warrant shall be signed by the commissioner and *it shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be identified with reasonable certainty.* It shall describe the offense charged in the complaint. It shall command that the defendant be arrested and brought before the nearest available commissioner." (Emphasis added.)

Although the arrest warrant did not name appellant by his correct name, it was sufficient given the knowledge of the authorities at that time, and it identified appellant with a reasonable certainty.

Appellant also contends that, because of the lack of knowledge as to his identity, the police officers could not have known with certainty whether they were actually searching his residence. At the time of his arrest, appellant had rent receipts indicating that he resided at 417½ South 6th Street. The affidavit in support of a search warrant and the search warrant both particularly described appellant's residence as:

"417½ South 6th St., Douglas, Converse County, Wyoming, [a] white stucco, single story house, peaked roof with white asphalt shingles[,] red snow fence surrounding the house, electric meter number 69676087 with red number four painted on the house wall beneath the meter."

Before using the search warrant, the police officers obtained positive assurance that appellant did live at the residence listed in the search warrant by contacting appellant's landlady and one of his neighbors. They identified appellant as the resident of that address from a picture which had been taken of him at the hospital.

### Night Search

■ With regard to the issues involving the suppression of evidence, appellant contends that the evidence obtained in the search of his residence must be excluded on the basis that the search was conducted improperly at night. In support of this contention, appellant refers this Court to the case of *State v. Lindner*, 100 Idaho 37, 592 P.2d 852, 857 (1979), which states:

"Historically, there has been a strong aversion to nighttime searches. Searches of private dwellings executed during the nighttime take on additional constitutional significance. The fourth amendment protects individual privacy, and entry into an occupied dwelling in the middle of the night is clearly a greater invasion of privacy than entry executed during the daytime. 'A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant.' *United States v. Smith*, 340 F.Supp. 1023, 1029 (D.C.Conn. 1972)." (Citations omitted.)

We agree with these well-established tenets of law. The burden of proving that a search and seizure is unlawful is on the

---

4. The arrest warrant identified the person to be arrested as: "BRAD STEER a/k/a ROBERT E. MOORE, TERRANCE J. YOUNG, EARL HAM-NER, DICK RING, TOBY JACKSON or TROY DICKSON."

defendant. *People v. Jansen,* Colo., 713 P.2d 907 (1986); *State v. Deutsch,* 103 N.M. 752, 713 P.2d 1008 (App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986), and *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2918, 91 L.Ed.2d 547 (1986). See also *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

> " 'In determining whether a trial court erred in admitting evidence claimed to have been illegally seized, an appellate court will usually not limit itself to the testimony received on the pretrial motion to suppress, but will also consider pertinent testimony given at the trial.' " *Neilson v. State,* Wyo., 599 P.2d 1326, 1330 (1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980), quoting from 3 Wright, Federal Practice and Procedure: Criminal § 678 at 143.

When findings are made by the trial court regarding a motion to suppress, they are binding on this Court unless they are clearly erroneous. Id.

Although appellant avers that the search of his residence occurred in the "dark of the night," there is nothing in the record before us which indicates such search occurred at night. Appellant failed in his burden of proving that the search of his residence was unlawful. The trial court found that the search was properly conducted, and we hold that appellant failed to show that the trial court's finding was clearly erroneous.

## SUFFICIENCY OF THE EVIDENCE

Appellant asserts that the evidence presented at trial was insufficient to sustain his convictions. The standard of review for a sufficiency of the evidence question in a criminal case is well established and has been stated many times by this Court:

> " '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict.' " *Dangel v. State,* Wyo., 724 P.2d 1145, 1148 (1986), quoting from *Aden v. State,* Wyo., 717 P.2d 326, 327 (1986).

> "[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

> \*　\*　\*　\*　\*　\*

> "It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence." *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985) (citations omitted).

See also *Jozen v. State,* Wyo., 746 P.2d 1279, 1282 (1987).

Pursuant to the provisions of § 6–3–301(a), the State had the burden of substantiating its five burglary charges by proving beyond a reasonable doubt, in each case, that appellant (1) entered a building (2) without consent of the person in lawful possession and (3) with an intent to steal. Review of the record discloses that, in all five cases, the residences were broken into in substantially the same manner, were entered, and had numerous articles taken. The owners of these residences appeared at trial stating that the entries into their homes were made without consent, and they identified numerous articles as belonging to them which had been recovered from the search of appellant's residence. In addition, a handwriting expert identified appellant's handwriting on a document recovered from his residence listing the name and address of a resident who had her mail stopped and who had been burglarized. While we realize that most of the evidence was circumstantial, it was sufficient to sustain appellant's convictions and to establish his guilt on the five counts of burglary. *Jozen v. State,* supra.

Pursuant to the provisions of § 6–3–402(a) and (c)(i), the State had the burden of proving beyond a reasonable

doubt that appellant (1) stole, took, carried, led, or drove away property of another (2) with the intent to deprive the owner or lawful possessor and (3) the property stolen, taken, carried, led, or driven away had a value of $500 or more.

Appellant concedes that he took an automobile, but he contends that he did not deprive the owner or lawful possessor of his property. Rather, appellant states that he was joyriding and that, if he had not been stopped by police, he might have returned the vehicle before it was needed by the owner. Appellant also alleges that, because it was a short time span that the vehicle was actually gone, because he drove by the owner's residence after stealing the vehicle, and because the owner had no need for the vehicle during the time it was stolen, he is relieved of the requisite intent. These allegations are absurd. There was testimony that appellant removed the vehicle from the owner's residence at night without the owner's permission and that his previous means of transportation may have been confiscated as a result of an interrupted burglary. This evidence is sufficient proof for the jury to find appellant intended to steal the vehicle and permanently deprive the owner of his property.

Appellant also contends it was not proven that the vehicle he stole was valued at $2,000 or more. Section 6-3-402(c)(i) specifically provides:

"[L]arceny is:

"(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is *five hundred dollars ($500.00) or more[.]*" (Emphasis added.)

During appellant's trial, the owner of the vehicle testified that his vehicle had been recently appraised at $650. He stated later that he had priced older models similar to his vehicle and that they were priced at approximately $2,700. He also testified that he himself would not sell his vehicle for less than $2,000. Further evidence and testimony were presented indicating that the vehicle was stocked with camping equipment, but no value for that equipment was ever established. Sufficient evidence was presented to establish the vehicle and its contents had a value of $500 or more.

We hold that the State proved beyond a reasonable doubt each of the elements necessary for convicting appellant of larceny.

## JURY INSTRUCTION

Appellant contends that the trial court erred when it refused to give his proposed jury instruction concerning larceny on the intent required for a conviction under § 6-3-402(a).

The jury instruction given by the court defined "deprive" as:

" 'To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or [t]o dispose of the property so as to make it unlikely that the owner will recover it.' "

Elements of the crime of larceny to be proved beyond a reasonable doubt by the prosecution were listed in an additional instruction as:

"3.   * * * [T]he intent to permanently deprive the owner

"4.   Of his personal goods[.]"

In *Miller v. State*, Wyo., 755 P.2d 855, 864 (1988), we stated:

"The general rule * * * involving instructions is that the trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions, when reviewed as a whole and in the context of the entire trial, fairly and adequately cover the issues."

We also recognized in that case that it is the duty of the trial court to instruct the jury on the general principle and theory applicable to a case, and we specifically provided that:

"The court may properly refuse incorrect or inapplicable statements of the law. The court may also refuse a requested instruction, even if correct, where the principles of the instruction have been

properly and sufficiently covered by other instructions. A defendant cannot complain merely because the precise words he requested are not embodied in an instruction." Id. at 864 (citations omitted).

The instructions as a whole fairly and adequately instructed the jury on the general principles and theories applicable to the case and did not confuse the jury. They were in accordance with the statutes under which appellant was charged and as such were accurate statements of the law. We hold that the trial court's refusal to give appellant's instruction was proper, and there was no reversible error.

Affirmed.

THOMAS, J., filed a concurring opinion.

THOMAS, Justice, concurring.

I concur in the disposition of this case in accordance with the majority opinion. In my judgment, the police officers clearly had probable cause to arrest Roose when they saw him driving the vehicle which had been reported stolen. The reference to a felony traffic stop seems to me to simply describe an arrest, and I am not certain that the law of arrest is aided by injecting the felony traffic stop terminology.

In addition, I would justify the search of the appellant's wallet and trousers as incidental to his arrest in accordance with *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). That rationale for me clearly fits the facts of this case, and it does not seem at all necessary to justify this search under the inventory rationale.