**Raymond Franklin BLAND,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 90–35.**

Supreme Court of Wyoming.

Dec. 24, 1990.

---

Fredric B. Butler, Eagle, Colo., for appellant.

Joseph B. Meyer, Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Theodore Lauer, Director of the Prosecution Assistance Program, and H. Frank Gibbard and Tom Lynch, Student Interns, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Raymond Franklin Bland appeals his convictions of possession with intent to deliver cocaine, possession of methamphetamine, and possession of marijuana.

We affirm.

Appellant raises the following issues:

1. Whether or not an Affidavit in support of a search and seizure warrant must set forth the complete description of the premises to be searched?

2. Whether or not the Court erred in allowing the Defendant's statements into evidence?

3. Whether or not the Court erred in allowing inadmissible hearsay testimony?

4. Whether or not the Court erred in not declaring a mistrial for the improper comments of the prosecutor during closing argument?

5. Whether or not the Court erred in instructing the jury as to the elements of the crimes charged and in drawing undue emphasis on one of the elements?

After receiving information from a confidential informant, detectives with the Green River police department initiated surveillance of the residence identified by the informant. The detectives discovered that the occupants of the residence had been involved with another individual in dealing methamphetamine. Through further surveillance, the detectives linked Appellant's wife to the residence. The officers also observed that the residence was being frequented by "known and convicted drug users and dealers:" The officers noted that traffic at the residence ceased once the occupants learned of the surveillance through the use of a police scanner. Subsequently, the detectives received information that one of the occupants of the residence which had been under surveillance, and who was suspected of dealing methamphetamine, used the car belonging to Appellant's wife to leave town. This information was verified through surveillance. A month later, the detectives received further information that the vehicles, identified during the earlier surveillance, were now stopping for brief periods of time at a residence occupied by Appellant and his wife. The detectives again verified this latest information by monitoring the traffic at Appellant's residence. The last piece of information the detectives received came from a witness who told them that she had accompanied Billy Riddle to a residence. From the witness' description of the residence, the officers believed the residence was the one occupied by Appellant and his wife. According to the witness, Riddle entered the residence for a brief period of time. Later, the police were summoned to a local motel where Riddle had collapsed after injecting cocaine into his arm with a hypodermic needle. The detectives, relying upon the above information, concluded that Appellant and his wife were dealing controlled substances from their residence.

All the above information appeared in the detective's affidavit in support of a search warrant. The affidavit identified the affiant/detective as an officer with the Green River police department. The affidavit listed Appellant and identified his residence as "# 31 MONROE TRLR CT." The search warrant attached to the affidavit placed the trailer court in the town of Green River. The Sweetwater County court judge (the town of Green River is located in Sweetwater County) reviewed the affidavit and found probable cause to issue the search warrant. The search warrant directed the police to search the entire trailer. The detective and at least four officers proceeded to Appellant's residence, # 31 Monroe Trailer Court, to execute the warrant. They knocked, and, when Appellant opened the door, they entered with their guns drawn and secured the premises. One of the officers partially handcuffed Appellant and showed him the search warrant. Appellant, after looking at the warrant, responded, "[O]kay, I see what you're looking for. Don't tear my house up. What you're looking for is back there." After the officers located the drug paraphernalia and contraband in Appellant's bedroom, they placed him under arrest.

Appellant was taken to the police station, and a detective, using his *Miranda* card, advised Appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). Appellant agreed to answer "some questions." The detective asked Appellant where he purchased his drugs, and, according to the detective, Appellant stated, "[T]hat's easy, because the person I purchase my drugs from is Billy Riddle, and— and in return for some type of plea bargain, [I will] help [you] get Billy Riddle because Billy Riddle led [you] to [me]."

The primary focus is on the detective's affidavit in support of the search warrant and on the statements Appellant made before and after the search. Appellant filed

a pretrial motion to suppress both the contraband seized during the search and his statements. At the conclusion of the suppression hearing, the district court denied Appellant's motion.

Appellant claims the affidavit failed to "particularly describ[e] the place to be searched" [1] when it omitted that the trailer court was located in Green River. According to Appellant, the affidavit in support of a search warrant must set forth the complete description of the premises to be searched. Appellant, therefore, concludes that the affidavit was "woefully deficient" and that the motion to suppress the contraband seized should have been granted.

■ It is the warrant, and not the affidavit, which authorizes the police to search those places particularly described in the warrant. LaFave, in his treatise on search and seizure, states that the primary purpose for the limitation that the warrant particularly describe the place to be searched is to "minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate." 2 W. La-Fave, Search and Seizure § 4.5 at 207 (2d ed. 1987). For example, the affidavit might list three separate places where the officers believe they have probable cause to search. If the court, after reviewing the affidavit, finds that probable cause exists as to only one of those three places, the officers have authority to search only that place particularly described in the warrant. Here, after reviewing the affidavit, the court signed the warrant which authorized and limited the search to "# 31 Monroe Trailer Court in the City of Green River, County of Sweetwater, State of Wyoming." It was the warrant which gave the authority to conduct the search, and there is no claim that the officers searched a place other than the one particularly described in the warrant.[2] We hold that the warrant particularly described the place to be searched.

■ During the suppression hearing, Appellant also claimed that the facts set out in the affidavit did not support the county court judge's finding of probable cause. The inquiry into whether an affidavit in support of a search warrant contains sufficient information for the issuing judge to make an independent judgment that probable cause exists was discussed in *Roose v. State*, 759 P.2d 478, 485 (Wyo.1988) (quoting *Bonsness v. State*, 672 P.2d 1291, 1292–93 (Wyo.1983)):

> "In order to issue a proper search warrant, a magistrate must have a 'substantial basis' for concluding that probable cause exists. A magistrate's determination of probable cause should be paid great deference.
>
> "[Article 1, § 4 of t]he Wyoming Constitution requires that a search warrant be issued only upon a showing of probable cause. Probable cause must be supported by an affidavit which supplies the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant. The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant. Facts which lead the affiant to believe that a warrant is justified must be presented in the affidavit. The test for determining the existence of probable cause is whether a factual situation is sufficient to warrant a reasonably cautious or prudent man to believe that a crime was being committed or that one had been committed. This test requires that the issuing officer weigh and consider all of the circumstances surrounding

1. Article 1, section 4 of the Wyoming Constitution recognizes:

   The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no *warrant* shall issue but upon probable cause, supported by affidavit, *particularly describing the place to be searched* or the person or thing to be seized.

(Emphasis added.) Appellant also cites the fourth amendment to the United States Constitution.

2. It was not within the officers' discretion to search any place other than the one particularly described in the warrant. 2 LaFave, *supra* at § 4.10.

the issuance of a warrant." (Footnote and citations omitted.)

After reviewing the affidavit under the above standard, we conclude that the test for probable cause was satisfied. The facts set out in the affidavit were sufficient for the county court judge to reasonably believe that there were drug transactions taking place at Appellant's residence and that there was evidence of that crime at the place to be searched (Appellant's residence). *See Ostrowski v. State,* 665 P.2d 471 (Wyo.1983). Through surveillance, the detectives verified each piece of information they received linking Appellant's residence to the drug trade. *See Bonsness,* 672 P.2d 1291. The detectives placed those verified facts in the affidavit and presented the affidavit to the county court judge, who weighed and considered all the circumstances surrounding the issuance of the search warrant under a common-sense and realistic approach. *See Hyde v. State,* 769 P.2d 376 (Wyo.1989). We hold that the search warrant was properly issued under the above guidelines.

■ At the suppression hearing, Appellant also claimed that his statement, "[O]kay, I see what you're looking for. Don't tear my house up. What you're looking for is back there," was not made voluntarily and, therefore, should have been suppressed because it violated both his fifth amendment right to avoid compulsory self-incrimination and his *Miranda* rights. The district court ruled that Appellant's statement was made voluntarily. Appellant argues that the officers' actions (entering with guns drawn, handcuffing him, and showing him the warrant) created an atmosphere of interrogation. The record discloses that Appellant was in custody (not free to leave while the officers searched his residence) but not under arrest when he made the statement. The testimony indicates that Appellant was arrested after he made the statement and the contraband was found. The focus is on whether Appellant was subjected to "custodial interrogation" before he made the statement. See *Sanville v. State,* 553 P.2d 1386, 1388

(Wyo.1976) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612), where we stated:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

(Emphasis omitted.) We hold that, even though Appellant was in custody at the time he made the statement, the officers were not interrogating Appellant—either verbally or through their conduct.

The United States Supreme Court in *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630, and this Court in *Priestley v. State,* 446 P.2d 405, 407–08 (Wyo.1968), framed the relevant inquiry:

Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess * * *. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [Miranda].*

(Emphasis added.) The testimony reveals that the statement was made voluntarily, without coercion or police interrogation. The officer testified that, after the police had secured the premises and Appellant, they showed the warrant to Appellant, who then made the statement. The officer also testified that they did not ask Appellant any questions, and Appellant testified that he was "not sure" whether any questions were asked prior to the time he made the statement. The record simply does not support an allegation that the officers interrogated or coerced Appellant. *Priestley,* 446 P.2d 405. The fact that the officers secured the premises before conducting the search does not, in the absence of evidence that excessive force or threats were used, constitute interrogation. It is

standard police practice, for the protection of both the officers and the individual, to secure the individual (place him in custody) during a search of the premises. Here, Appellant was in custody, but there was no interrogation. We hold that Appellant's statement was made voluntarily without coercion or interrogation. *Griffin v. State,* 749 P.2d 246, 254 (Wyo.1988) ("A statement that is not the product of interrogation or compulsion attributable to authorities or some other improper action, is voluntary and admissible").

■ Appellant claims that the second statement, which he made at the police station, implicating Billy Riddle should have been suppressed. He asserts that the statement was not made voluntarily since the *Miranda* warnings he received were insufficient. That claim is not supported by the record, and Appellant makes no separate claim that he was coerced into making the second statement. We further note that, although the district court did not expressly state that the second statement was made voluntarily, it did deny Appellant's motion to suppress both statements at the conclusion of the suppression hearing. We stated in *Dodge v. State,* 562 P.2d 303, 309 (Wyo.1977), that it is a "better practice" for the district court to expressly find that the statement was voluntary and to explain how it arrived at that conclusion. We went on to hold, however, that, "as long as the [district] court's findings [that the statement was voluntary] can be ascertained from the record, that is sufficient" to affirm the district court's denial of the motion to suppress the statement. *Id.* at 310. *See also Garcia v. State,* 777 P.2d 603 (Wyo.1989).

The officer testified that he used his *Miranda* card to advise Appellant of his rights under *Miranda.* The officer also testified that he was unable to recite the *Miranda* warnings he gave to Appellant without looking at his card. Appellant uses this testimony to fashion an argument that the *Miranda* warnings given to him must have been insufficient if the officer could not remember what those warnings were without looking at his card. At trial, the district court ruled that Appellant was

sufficiently advised of his rights under *Miranda.* Appellant also claims the district court "unduly prejudiced the jury" when it ruled, in response to an objection by Appellant, that the advisement was sufficient. Appellant should have either requested that the district court excuse the jury before he made the objection or asked to approach the bench if he was concerned about possible prejudice.

At the suppression hearing, Appellant did not testify that the *Miranda* warnings were insufficient; his testimony was that he was not sure of the "exact words" used to advise him of his rights. Appellant does not direct us to anything in the record which would support his claim that the *Miranda* warnings were insufficient. *Howard v. State,* 102 Nev. 572, 729 P.2d 1341 (1986), *cert. denied* 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987) (nothing in the record to contradict or oppose the trial court's ruling that *Miranda* warnings had been properly given). We conclude that our reasoning and holding in *Dodge* are applicable to this case, and we affirm the district court's denial of the motion to suppress.

■ Appellant claims that the district court erred when it allowed the testimony of the State's expert at trial. The State's expert, a forensic scientist with the division of criminal investigation, testified that he listed the drugs seized and submitted for identification as either "Schedule I or Schedule II." The State's expert further testified that he listed the substances according to the statutory schedules for informational purposes only. Appellant objected at trial to this testimony on both hearsay and competency grounds; his objection was overruled. The district court did not abuse its discretion when it allowed the State's expert to testify for informational purposes as to whether a particular substance was a Schedule I or a Schedule II substance. *Reed v. Hunter,* 663 P.2d 513 (Wyo.1983). The Wyoming Rules of Evidence permit an expert's testimony if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence." W.R.E. 702.

Here, the testimony of the State's expert (who routinely places controlled substances into their appropriate schedules) assisted the jury in its understanding of the evidence, which is permitted under the Wyoming Rules of Evidence.

█ Appellant claims the prosecutor's comments during his closing argument were prejudicial as a matter of law and constituted plain error. It is not clear why Appellant would claim "plain error" when he objected to the argument made by the prosecutor during his closing argument. Plain error applies when there is no objection at trial. *McLaughlin v. State*, 780 P.2d 964 (Wyo.1989). Thus, we will not apply a plain error standard of review. During his closing argument, the prosecutor referred to an inference he thought could be drawn from the evidence presented at trial; i.e., Appellant's intent to distribute cocaine given the location of the cocaine and the seizure of paraphernalia used for distribution. Appellant objected, and the district court overruled Appellant's objection. Both sides are entitled to a certain amount of latitude to comment during closing arguments on what they believe the evidence shows. As stated in *Jeschke v. State*, 642 P.2d 1298, 1301–02 (Wyo.1982):

> In presenting a closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function. The purpose of closing argument is to give both the prosecution and defense counsel the opportunity to explain the significance of the evidence and how it should be viewed. * * * [T]he scope of permissible argument, as well as the injury caused by misconduct, are best determined by the trial judge.

(Citations omitted.)

In addition, the district court instructed the jury, "As to any statement made by counsel in explanation or argument concerning the facts in the case, you must not regard such a statement as evidence." The jury was properly reminded that closing arguments are not evidence. We stated in *Mayer v. State*, 618 P.2d 127, 132 (Wyo.

1980), "The scope of permissible argument by counsel to the jury is within the discretion of the trial court and will not be disturbed unless there is a clear or patent abuse of the discretion." We hold that the district court did not abuse its discretion when it permitted the prosecutor to comment on the evidence during his closing argument.

█ Appellant objected to the comment made by the prosecutor during his rebuttal that Appellant has the same right as the prosecution to subpoena a witness for trial. The district court overruled Appellant's objection. Appellant's objection should have been sustained. The State has the burden of proof, and whether or not the defense subpoenaed a witness is irrelevant. The prosecutor's comment was not prejudicial, however, given the considerable amount of evidence the State presented during the trial linking Appellant to the charged offenses. *Pena v. State*, 792 P.2d 1352 (Wyo.1990).

█ Appellant also claims that the prosecutor improperly commented on his credibility. Appellant, however, does not cite any particular comment in the record or present any argument other than the bald assertion that the comment was improper and constituted "plain error." For plain error to exist, it must first be clear on the record that an unequivocal rule of law was breached. The record here does not clearly establish that an unequivocal rule of law was breached; plain error has not been shown. *Wheeler v. State*, 691 P.2d 599 (Wyo.1984).

The final issue raised by Appellant is whether the district court erred in instructing the jury on the elements of the crime. We find no error in the instructions given and decline to address an issue where Appellant does not cite any authority or present a cogent argument to support his claim. *Story v. State*, 788 P.2d 617 (Wyo.), *cert. denied*, —— U.S. ——, 111 S.Ct. 106, 112 L.Ed.2d 76 (1990).

Affirmed.