Joseph P. DeLEON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 94–83.

Supreme Court of Wyoming.

May 2, 1995.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, and Diane M. Lozano, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Elizabeth A. Chapman, Student Intern, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Appellant challenges the district court's refusal to suppress evidence seized pursuant to a search warrant which was executed while he was being detained at a police station. He also argues that the district court abused its discretion when it refused to grant a mistrial.

We affirm.

## I. ISSUES

Appellant states the issues:

ISSUE I

Whether the trial court erred in denying Mr. DeLeon's motion to suppress the search warrant and evidence obtained pursuant to the search because Mr. DeLeon was illegally detained at the police station without probable cause in order to ensure the execution of the search warrant.

ISSUE II

Whether the trial court abused its discretion when it did not grant Mr. DeLeon's motion for mistrial because his defense was unfairly prejudiced by (1) the State's attack on defense counsel's integrity; and (2) the State's attack on the alibi witness's competency.

The State rephrases the issues:

I. Did the district court err in denying appellant's motion to suppress the evidence seized pursuant to the search warrant?

II. Did the district court abuse its discretion in denying appellant's motion for a mistrial?

## II. FACTS

Appellant, Joseph DeLeon (DeLeon), was arrested and charged with burglary on April 14, 1993. He was accused of burglarizing the Subway sandwich shop in Laramie, Wyoming. Detective Mark Beck, of the Laramie Police Department, was one of the detectives in charge of the investigation which culminated in DeLeon's arrest and a warrant search of his apartment.

DeLeon pled not guilty and elected to have the matter heard by a jury. Prior to trial, DeLeon's counsel filed a motion seeking to suppress certain evidence. The district court denied the motion to suppress and the jury returned a guilty verdict. DeLeon filed this timely appeal. Additional facts will be discussed as required.

## III. DISCUSSION

MOTION TO SUPPRESS

■ The determinative issue is whether DeLeon was illegally seized. More fully stated, the question is whether evidence seized pursuant to a search warrant was tainted as fruit of the poisonous tree because the probable cause supporting the search warrant was gleaned from an illegal seizure. Fruit of the poisonous tree is evidence seized pursuant to an illegal search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Mapp v. Ohio*, 367 U.S. 643, 655–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961) (applying the rule to the states). Such evidence may, under certain circumstances, be excluded from

the prosecution's case in chief. *Wong Sun,* 371 U.S. at 484–85, 83 S.Ct. at 415–16.

Relying on this exclusionary rule, DeLeon argues that he was illegally seized while at the police station, and that this illegal seizure taints the evidence obtained pursuant to the search warrant. DeLeon's argument must fail because he was not illegally seized. When DeLeon was seized, the fruit of the investigation was quite fresh and, in fact, represented the probable cause which established the legality of his seizure.

■ The question of whether a person has been seized is determined by reference to an objective test. *Wilson v. State,* 874 P.2d 215, 220, 225 (Wyo.1994). When ·applying that test, a court considers all the surrounding circumstances and asks whether a reasonable person, confronted with a particular citizen-officer encounter, would feel free to decline the officer's request or terminate the encounter. *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991).

■ The question of whether a seizure is supported by probable cause is also resolved by reference to an objective test. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964) (rejecting a subjective test). Under this objective test, a seizure is supported by probable cause if, at the moment of the seizure, the officer is aware of trustworthy facts and circumstances that would lead a reasonable person to believe that the suspect is committing or has committed a crime. *Rodarte v. City of Riverton,* 552 P.2d 1245, 1253 (Wyo.1976). We review the evidence in this case to determine whether Detective Beck had acquired personal knowledge of trustworthy facts and circumstances that would lead a reasonable person to conclude that DeLeon had burglarized the Subway. The district court found that Detective Beck had acquired such knowledge and, therefore, held that DeLeon's seizure was supported by probable cause. We agree.

■ Evidentiary rulings are not normally reversed unless it is clear that the district court abused its discretion. *Wilson,* 874 P.2d at 218. Abuse of discretion occurs, at least in part, when a court fails to properly apply the law. *Id.* Factual findings articulated by the district court following a hearing on a motion to suppress will not be disturbed unless those findings are clearly erroneous. *Id.* The constitutionality of a particular search or seizure, however, is a question of law which is reviewed *de novo. Id.* The law of search and seizure is, by necessity, fact specific.

■ The Subway burglary investigation was effective and successful. The fruits of that investigation produced an ample supply of probable cause. The burglary was reported on April 11, 1993. Initial interviews with Subway employees indicated that the burglary was probably an inside job. An inside job was suspected because the burglar knew exactly where the money was hidden. This suspicion was reinforced by the fact that employees who closed the store at night knew exactly where the money was hidden. DeLeon, a former employee, became a suspect.

The burglar gained access to the Subway by cutting a hole in the sheetrock above the door in a common hallway. Shoe prints were visible in the sheetrock dust below the hole. A Hi–Tec brand logo was visible in the center of each shoe print. In addition, the burglar left black scuff marks on the white wall when he climbed through the hole. Hi–Tec shoe prints were also discovered inside the store. The Hi–Tec shoe prints inside the store led directly to where the money was hidden.

Possessed of the foregoing information, Detective Beck and a fellow officer made their way to DeLeon's apartment at noon on April 14, 1993. DeLeon was not home when the detectives arrived. However, Detective Beck noticed Hi–Tec shoe prints on the snow-covered stairs leading to DeLeon's apartment. A piece of the Hi–Tech logo was missing from one shoe print. The same piece was missing in the shoe prints that Detective Beck had observed at the burglary scene. DeLeon was now a prime suspect.

When DeLeon arrived home, the detectives introduced themselves and asked if they could come inside. DeLeon invited the detectives into his apartment. The detectives

then asked if they could search the apartment. DeLeon refused to allow a search.

Detective Beck noticed that DeLeon was wearing black soled shoes with a Hi–Tec logo on the side. Detective Beck asked to see the bottom of those shoes. DeLeon raised his foot and allowed Detective Beck to look at the bottom of one shoe. Embedded in the treads of the shoe, Detective Beck observed what appeared to be bits of sheetrock or plasterboard. Detective Beck then asked DeLeon if he could have the shoes. DeLeon removed the shoes and handed them to Detective Beck. Eventually, Detective Beck asked DeLeon if he would come down to the police station for an interview. DeLeon indicated that he would. The investigation had borne considerable fruit, none of which was tainted by any illegality.

DeLeon argues, rather unconvincingly, that his consent to accompany the detectives to the police station for an interview was coerced. In the alternative, DeLeon argues that he revoked his consent when he refused to waive his *Miranda* rights. We reject both claims.

■ There is no evidence in the record to indicate that DeLeon was coerced into accompanying the detectives to the police station. He was simply asked, in the secure surroundings of his own home, whether he would come to the police station for an interview. DeLeon agreed to do so. This exchange hardly constitutes coerced consent. *See, Fitzgerald v. State*, 601 P.2d 1015, 1018 (Wyo.1979). Further, we note that no seizure occurs when an officer simply requests that a citizen come to the police station to answer questions. *Id.; State v. Hunt*, 150 Vt. 483, 555 A.2d 369, 376 (1988), *cert. denied*, 489 U.S. 1026, 109 S.Ct. 1155, 103 L.Ed.2d 214 (1989).

■ DeLeon's argument that he "revoked" his consent when he refused to waive his *Miranda* rights lacks merit. DeLeon's refusal to waive his *Miranda* rights has nothing to do with whether he voluntarily accompanied the detectives to the police station. By consenting to come to the police station, DeLeon waived his right to be free from an unreasonable seizure, a right guaranteed under the Fourth Amendment. On the other hand, DeLeon's refusal to waive his *Miranda* rights is an affirmative invocation of his Fifth Amendment right to be free from self incrimination. Consent, freely given, cannot be "revoked" by later asserting a separate constitutional right.

■ Shortly after arriving at the police station, DeLeon was told that he could not leave until a search warrant was obtained. That restriction amounted to a seizure because no reasonable person would feel free to terminate an encounter with a police officer under those circumstances. *Bostick*, 501 U.S. at 439, 111 S.Ct. at 2389. That seizure, however, was supported by probable cause. At that moment, Detective Beck was aware of physical evidence and other trustworthy facts and circumstances that would lead a reasonable person to believe that DeLeon had committed the burglary at the Subway. *Rodarte*, 552 P.2d at 1253. We hold that the evidence and circumstances described above constituted probable cause and DeLeon was properly seized. Because the seizure of DeLeon was supported by probable cause, the evidence seized pursuant to the search warrant executed on his apartment cannot be suppressed.

### REFUSAL TO GRANT MISTRIAL

Next, DeLeon argues that the district court abused its discretion when it refused to grant a mistrial. Specifically, DeLeon alleges that the prosecution attacked both the defense counsel's integrity and the competence of DeLeon's alibi witness. Neither argument establishes that the district court abused its discretion.

■ The decision to grant a mistrial rests within the sound discretion of the district court. *Clegg v. State*, 655 P.2d 1240, 1243 (Wyo.1982). Absent a clear abuse of discretion, which prejudices the defendant, a decision not to grant a mistrial will not be reversed. *Id.* In *Clegg*, we held that the district court did not abuse its discretion when it refused to grant a mistrial after the rape victim, in open court, called the defendant a "goddamn [sic] liar." *Id.* at 1241. If calling the defendant a "goddamn [sic] liar"

in open court is not sufficiently prejudicial to require a mistrial, then the innocuous comments DeLeon cites in his appellate brief cannot mandate a mistrial. In his appellate brief, DeLeon claims that the prosecution "attacked defense counsel's integrity" when the prosecution questioned the way defense counsel was handling certain pieces of evidence. DeLeon further claims that the district court prejudiced him by admonishing defense counsel, in the presence of the jury, not to "destroy * * * the integrity of any exhibit." We hold that neither the prosecution's objection nor the district court's comments prejudiced DeLeon.

DeLeon also complains that the prosecution's attack on the competence of DeLeon's alibi witness was prejudicial because it occurred in the presence of the jury. The prosecutor requested an opportunity to voir dire the alibi witness, and the district court granted that request without removing the jury. During that voir dire, the witness admitted that he had violated the court's order of sequestration by talking to other witnesses. Immediately following this admission, the jury was excused.

DeLeon argues that the credibility of the alibi witness was undermined and that the district court's curative instruction was ineffective because defense counsel was not allowed to rehabilitate the alibi witness in the presence of the jury. DeLeon concludes that these events prejudiced him by adversely affecting his alibi defense. This argument lacks merit.

 Ours is an adversarial system of justice and the prosecution had every right to "undermine" the credibility of the alibi witness. The prosecution observed the alibi witness having a conversation with other witnesses and was certainly entitled to inquire into the nature of that conversation. If a witness violates an order of sequestration, the district court may allow opposing counsel to cross examine that witness and elicit portions of the violative conversation. *See, Towner v. State,* 685 P.2d 45, 47 (Wyo.1984) (noting cross-examination on the violation is a common remedy). The voir dire in this case served the same purpose as cross-examination and was, therefore, proper. De-

Leon's contention that defense counsel was not allowed to rehabilitate the witness in front of the jury is not supported by the record. The district court asked defense counsel whether he wanted to bring the jury back before he rehabilitated the witness and defense counsel said that he did not. The district court was not required to analyze defense counsel's strategic decisions. The district court did not abuse its discretion and it properly denied the motion for mistrial.

## IV. CONCLUSION

DeLeon was not illegally seized and, therefore, his motion to suppress was properly denied. DeLeon's motion for a mistrial was also properly denied because he failed to establish any prejudice. The district court's decision is affirmed in all respects.