**Mark SOUTHWORTH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 95–49.**

Supreme Court of Wyoming.

March 20, 1996.

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Assistant Public Defender; Gerald M. Gallivan, Director of the Defender Aid Program; and Frederick Dethlefsen and Delia Reeves, Student Interns for the Defender Aid Program, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Mark Southworth appeals from his conviction for possession with intent to deliver marijuana.

We affirm.

## ISSUES

Appellant did not include in his brief a statement of the issues which are being presented for our review as is required by W.R.A.P. 7.01(d). He does, however, make three arguments in his brief:

## ARGUMENT I

Evidence derived from the search of Appellant's residence should have been suppressed as the affidavit for a search warrant did not establish probable cause to search and the officer[ ]s could not have reasonably relied in good faith on the warrant, thus the police were not legitimately on the premises when the plain view search and seizure occurred.

## ARGUMENT II

Testimonial and physical evidence derived from the custodial interrogation of Appellant should also have been suppressed as he was not informed of his rights against self incrimination prior to questioning.

## ARGUMENT III

The Wyoming Supreme Court should decline to adopt a good faith exception to the exclusionary rule under Article I § 4 of the Wyoming Constitution.

## FACTS

Computer equipment was taken from a Cheyenne elementary school in a burglary which was discovered on January 2, 1994. This burglary was featured on the "Silent Witness" television program during the week of January 10, 1994.

An informant told a detective for the Laramie County sheriff's department that he had observed Appellant hooking up some computer equipment which appeared to match the description of the equipment featured on the "Silent Witness" program. He reported that he had learned from his and Appellant's mutual friend that the person who had stolen the computer equipment asked Appellant to get rid of it and that, instead of doing so, Appellant decided to keep the equipment. The informant said that the mutual friend had also mentioned that the school district identification tags were still attached to the computer equipment.

The detective prepared an affidavit to support the issuance of a search warrant. On the basis of this affidavit, the county court judge issued a search warrant for Appellant's residence, listing the items to be searched for as:

Two Apple IIe disc drives

Apple IIe monitor

Computer cables

Other stolen property belonging to the Laramie County School District

Five officers executed the warrant on January 18, 1994, at a mobile home which was Appellant's residence. When they arrived at the mobile home, one of the residents was in the front yard. The officers entered the mobile home with their weapons drawn in order to secure the premises. Another resident was in the living room, watching television. As two of the officers were proceeding down the hallway, they encountered Appellant, who apparently was leaving his bedroom. They advised him that they had a search warrant and asked him to wait in the living room until they secured the mobile home. Appellant informed the officers that he needed to take his dog outside, which he did. Appellant reentered the mobile home and proceeded to wander around.

When the officers had the premises secured, they holstered their weapons. One officer returned to Appellant's bedroom to begin his search. Almost immediately, he noticed a large plastic baggie of marijuana which was sitting on top of a cassette holder on a dresser. Appellant appeared in the doorway to his bedroom, and the officer asked him about the marijuana. Appellant replied that this baggie contained the stash which he kept for friends and that he had not had time to get rid of it. He further offered that he kept his personal stash in the headboard of his waterbed. He also told the officer that he sold only enough marijuana to allow him to smoke for free. When he was asked whether he had any scales, Appellant went to a dining room cabinet and retrieved a scale.

The officers discovered the computer equipment in another bedroom, but the school district identification tags were missing. The officers, therefore, conducted an intensive search of the entire mobile home, looking for the missing tags. A further search of the dining room cabinets revealed a larger scale as well as some other drug paraphernalia. The officers seized the marijuana,

the scales, the drug paraphernalia, and the computer equipment.

After they completed the search of the mobile home, the officers asked the three residents to accompany them to the sheriff's department to answer some questions. The residents rode with the officers in separate vehicles and were interviewed in separate rooms. After the interviews were completed, an officer gave the residents a ride back to their mobile home.

On February 25, 1994, several weeks after the search had been made, a warrant for Appellant's arrest was issued, and a criminal information was filed which charged Appellant with possession with intent to deliver marijuana as defined in WYO.STAT. §§ 35-7-1031(a)(ii) and 35-7-1014(d)(xxi) (1985). Appellant was arrested, and, at his arraignment, he pleaded not guilty.

Appellant moved on Fourth Amendment and Fifth Amendment grounds to suppress the bags of marijuana, the scales, and the statements which he made to the officers. A hearing was held, and the district court denied Appellant's motion. Appellant subsequently entered a conditional guilty plea, reserving the right to appeal from the denial of his motion to suppress. The district court sentenced Appellant to serve a prison term of not less than two years nor more than four years but then suspended Appellant's jail sentence and placed him on supervised probation for a period of four years. Appellant appealed to this Court.

## DISCUSSION

### A. Standard of Review

■ We do not disturb the findings on factual issues which the district court has made in considering a motion to suppress unless the findings are clearly erroneous. *Wilson v. State,* 874 P.2d 215, 218 (Wyo. 1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the district court's determination. *Id.* The constitutionality of a partic-

ular search or seizure is a question of law which we review *de novo.* *DeLeon v. State,* 894 P.2d 608, 611 (Wyo.1995).

### B. Sufficiency of the Affidavit

Appellant contends that the information contained in the affidavit failed to satisfy the substantial basis test which is used in determining whether probable cause supported the issuance of the search warrant.

■ We have often addressed the issue of whether an affidavit in support of a search warrant contained sufficient information for the issuing judge to make an independent judgment that probable cause existed. *Bland v. State,* 803 P.2d 856 (Wyo.1990); *Roose v. State,* 759 P.2d 478 (Wyo.1988); *Bonsness v. State,* 672 P.2d 1291 (Wyo.1983). We have said: .

"In order to issue a proper search warrant, a magistrate must have a 'substantial basis' for concluding that probable cause exists. A magistrate's determination of probable cause should be paid great deference.

"[Article 1, § 4 of t]he Wyoming Constitution requires that a search warrant be issued only upon a showing of probable cause. Probable cause must be supported by an affidavit which supplies the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant. The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant. Facts which lead the affiant to believe that a warrant is justified must be presented in the affidavit. The test for determining the existence of probable cause is whether a factual situation is sufficient to warrant a reasonably cautious or prudent man to believe that a crime was being committed or that one had been committed. This test requires that the issuing officer weigh and consider all of the circumstances surrounding the issuance of a warrant."

*Roose,* 759 P.2d at 485 (quoting *Bonsness,* 672 P.2d at 1292–93 (footnote and citations omitted)). *See Bland,* 803 P.2d at 859–60; *see also Guerra v. State,* 897 P.2d 447, 455

(Wyo.1995). While mere suspicion is not adequate, certainty is not required. *Davis v. State,* 859 P.2d 89, 94 (Wyo.1993).

█ "A magistrate's determination of probable cause is reviewable, under a 'totality of the circumstances test.'" *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983); *Bonsness,* 672 P.2d at 1293). An affidavit upon which a search warrant is issued carries a presumption of validity. *Id.; see also Guerra,* 897 P.2d at 452.

█ In determining whether an affidavit establishes probable cause, a magistrate is entitled to rely upon practical considerations of everyday life. 897 P.2d at 456. "The 'affidavits of probable cause for search are to be tested by much less rigorous standards than those governing admissibility of evidence at the trial.'" *Hyde v. State,* 769 P.2d 376, 380 (Wyo.1989) (quoting *Deeter v. State,* 500 P.2d 68, 70 (Wyo.1972)).

█ Applying the above rules to the affidavit in the case at bar and considering the totality of the circumstances, we conclude that sufficient probable cause supported the issuance of the warrant. The affidavit which was presented to the county court judge provided in pertinent part:

3. That affiant received information that a burglary occurred at Rossman Elementary School, Cheyenne, Laramie County, Wyoming. The burglary was discovered on January 2, 1994, by a sheriff's deputy who saw signs of forced entry. Taken in the burglary were an Apple IIe computer, Apple IIe printer, two (2) Apple IIe computer disc drives, Apple IIe monitor and an RCA VCR.

4. That the crime was featured on Silent Witness during the week of January 10, 1994.

5. That on January 18, 1994, the affiant was approached by a citizen (hereinafter referred to as informant), whose father works at the Laramie County Sheriff's Department. The informant told affiant that on January 14, 1994, he had been at a residence located at 316 East Allison, Cheyenne, Laramie County, Wyoming. The informant knew the occupants of the

residence, through a friend of his.... While at the residence the informant noticed some computer equipment which [Appellant] was trying to hook up. The informant was aware that the occupants of the residence had low paying jobs and were receiving State aid and did not seem to have the financial ability to afford a computer system.

6. That on January 16, 1994, the informant's friend asked the informant how much trouble someone could get in for buying stolen property. The informant said to his friend, "The computer is stolen isn't it?" and the friend replied "yes[."] The friend indicated that the computer had been stolen and that the person who stole it wanted to get rid of it. The thief asked [Appellant] to get rid of the computer for him and [Appellant] decided to keep it. The informant's friend verified that the computer equipment had been stolen from an elementary school and that the crime had been featured on Silent Witness. The friend also verified that the computer equipment was stamped with school district identification and was upset that it had been stolen from an elementary school.

7. That affiant was told by the informant that he had observed two (2) Apple IIe disc drives, an Apple IIe monitor and various computer cables. The affiant took the informant to Rossman [S]chool to show the informant computer equipment similar to that which was stolen. The informant identified the equipment at Rossman School as being identical to that which he had seen at 316 East Allison, Cheyenne, Laramie County, Wyoming. The informant indicated that the equipment was on a table in the livingroom.

8. That affiant learned that the informant's friend's mother was a frequent visitor at 316 East Allison, Cheyenne, Laramie County, Wyoming. The mother indicated that she frequently saw at the residence, property which she believed to be stolen.

9. That affiant has identified the occupants of 316 East Allison, Cheyenne, Laramie County, Wyoming, as [Appellant],....

That affiant is aware that [Appellant] has had frequent contact with law enforcement for suspicious behavior.

This information would lead a reasonably cautious and prudent magistrate to conclude that the computer equipment which had been stolen from the elementary school could probably be found at Appellant's mobile home. The informant's father worked for the Laramie County sheriff's department, which suggests that the informant had every reason to be truthful and accurate. The informant observed a suspicious possession of a valuable computer system. The informant's friend, whom Appellant had apparently confided in, told the informant that the computer equipment had been stolen from an elementary school and that the equipment had been the subject of a recent "Silent Witness" program. Furthermore, law enforcement officers corroborated the informant's report by confirming that the persons whom informant said lived in the mobile home were the actual residents of the premises. The officers also confirmed that the informant's description of the equipment matched some of the items which were stolen from the elementary school. Further corroboration was provided when the informant was taken to the elementary school where he identified from the remaining equipment what he had seen in Appellant's mobile home.

The affidavit did not contain "bare conclusions." Instead, the facts which were presented in the affidavit described verifiable particulars and were corroborated by the informant's report. The officer presented the affidavit to the county court judge, who, under a common-sense and realistic approach, weighed and considered all the circumstances which surrounded the issuance of the search warrant. *See Bland,* 803 P.2d at 860. The affidavit contained sufficient facts to establish that the officers had probable cause to search the described premises, and the county court judge properly issued the search warrant.

Although the district court did not find the warrant to be defective, it concluded that, if the warrant were found to be defective, the good faith exception to the exclusionary rule would apply to sustain the admission of the evidence. Since the affidavit presented to the county court judge contained sufficient facts to establish that the officers had probable cause to search the described premises and the warrant was properly issued, we do not need to address the issue of whether we should adopt the good faith exception to the exclusionary rule formulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### C. Requirement of *Miranda* Rights

Appellant contends that the officers violated the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when they questioned him in his bedroom after they found the marijuana. He maintains that his statements were the product of an interrogation and that the procedure the officers used to secure the premises deprived him of his freedom in a significant way. As a result, he argues, neither his responses to the officers' inquiries nor any physical evidence which was obtained from his responses should be allowed into evidence.

In addressing this issue, we have often quoted the United States Supreme Court's ruling:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. *See Wunder v. State,* 705 P.2d 333, 334 (Wyo. 1985); *Shaffer v. State,* 640 P.2d 88, 96 (Wyo. 1982); *see also Roderick v. State,* 858 P.2d 538, 546 (Wyo.1993).

The United States Supreme Court has also said in regard to its *Miranda* decision:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause

the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

We have previously been faced with a case which had a similar fact pattern as that presented in the case at bar, *Bland,* 803 P.2d 856. In *Bland,* approximately five police officers went to the appellant's residence to execute a search warrant. *Id.* at 858. They knocked on the door, and, when the appellant opened the door, they entered with their guns drawn and secured the premises. *Id.* After looking at the warrant, the appellant responded, " '[O]kay, I see what you're looking for. Don't tear my house up. What you're looking for is back there.' " *Id.* We held that the fact that the officers secured the premises before they conducted the search did not, in the absence of evidence that excessive force or threats were used, constitute interrogation because such a precaution is a standard police practice which is used to protect both the officers and the individual. 803 P.2d at 860–61. We also held that, although the appellant was in custody and handcuffed, he gave his statements voluntarily rather than as a result of being interrogated. 803 P.2d at 861.

In the case at bar, no showing was made that Appellant was in custody when the officers questioned him. Appellant does not make any claim of coercion, threats, promises, or deception. He had not been physically seized, he was not handcuffed, and no weapons were drawn when he made his remarks. The officers did not give any outward signs that they were restricting Appellant's ability to leave or any indication that

Appellant was under arrest. In fact, Appellant was very friendly, polite, and talkative during the entire time that the officers were conducting their search. Additionally, Appellant was in his own home when he offered these statements. The other residents of the mobile home, whom Appellant had lived with on and off for about three and one-half years and whom he thought of as being family, were also present when this questioning took place. *See, e.g., Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (holding that interrogation in the suspect's home was noncustodial); *see also* 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.6(e) (1984) (the view that at-home questioning is noncustodial is strengthened when the suspect's friends or family members are present at the time). Furthermore, even though Appellant had been asked to stay in the living room until the mobile home was secured, he took his dog outside. Upon reentering the mobile home, he followed the officers around as they conducted their search rather than staying in the living room area as he was asked to do.

 An officer testified that he felt that, after the marijuana was found, Appellant was not free to leave; however, he never told Appellant that he was not free to leave, nor did he hear anyone else tell Appellant that he was not free to leave. " 'A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.' " *Wunder,* 705 P.2d at 335 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)).

" 'It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning[.]' " ... *United States v. Caiello,* 420 F.2d 471, 473 (CA2 1969) [, *cert. denied,* 397 U.S. 1039 [90 S.Ct. 1358, 25 L.Ed.2d 650] (1970) ] [A]n objective, reasonable-man test is appropriate because, unlike a subjective test, it "is not solely

dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of anticipating the frailties or idiosyncracies of every person whom they question[." *People v. P.,* 21 N.Y.2d 1, 286 N.Y.S.2d 225, 230, 233 N.E.2d 255, 260 (N.Y.1967).]

*Id.* (quoting *Berkemer,* 468 U.S. at 442 n. 35, 104 S.Ct. at 3151 n. 35). No objective manifestations of a custodial setting were present in this case; therefore, a reasonable man in Appellant's position would not have considered himself to be in police custody. *See Glass v. State,* 853 P.2d 972, 976 (Wyo.1993).

## CONCLUSION

We hold that, because the affidavit contained sufficient facts to establish that the officers had probable cause to search the described premises, the county court judge properly issued the search warrant. We also hold that, because Appellant was not in custody when the officers inquired about the marijuana they found in his bedroom, the district court properly denied Appellant's motion to suppress his statements as well as the marijuana, the scales, and the drug paraphernalia which were obtained from his mobile home.

Affirmed.

LEHMAN, Justice, concurring in result only.

I am able to concur in the result because conviction was a foregone conclusion once the marijuana was properly admitted. However, it is inconceivable that one caught by police holding the bag, as it were, of marijuana could believe they were free to go. Such a belief would be tantamount to the burglar, caught by police busily collecting booty in a wheelbarrow, thinking *he* was free to go. *See Wayt v. State,* 912 P.2d 1106 (Wyo. 1996).

In this instance, rather than advising appellant of his constitutional rights via *Miranda* and assuring the use of any statements he made in court, the officers chose to question appellant first and transfer the responsibility of admissibility to the court. After hours of preparing motions, conducting evidentiary hearings, presenting briefs and

arguments, the courts found appellant's rights were not violated, a function officers could have performed in 30 seconds by advising him of his rights after they found the marijuana and before they questioned appellant.